No. 47,358

State of Kansas, *Appellant,* v. Willis E. Tygart, *Appellee.*

(524 P. 2d 753)

Opinion filed July 17, 1974.

*J. J. B. Wigglesworth,* assistant district attorney, argued the cause, and *Vern Miller,* attorney general, and *Margaret W. Jordan,* district attorney, were with him on the brief for the appellant.

*James L. Eisenbrandt,* of Soden, Eisenbrandt & Isenhour, of Mission, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Willis E. Tygart was charged with the felonious possession of a pistol. (K. S. A. 1973 Supp. 21-4204 [b].) Prior to trial the district court conducted a hearing and ordered a pistol and certain testimony suppressed as being the fruits of an unlawful search of defendant's motor vehicle. The state has appealed pursuant to K. S. A. 1973 Supp. 22-3603. The single question presented is whether or not the search of Tygart's vehicle, which resulted in the seizure of the pistol, was unlawful.

The evidence in opposition to the motion to suppress consisted of the testimony of the two police officers who arrested Tygart and searched his vehicle. The following facts are drawn from this testimony.

On the evening of July 26, 1973, an altercation occurred between Tygart and a female at 8708 W. 82nd Street in Overland Park, Kansas. The police were advised that Tygart knocked the woman down, threatened to kill her and left, after having taken a pistol which was kept on the premises. A warrant was issued for the arrest of Tygart on a charge of assault, a class C misdemeanor. The following morning officers Evans and Kerns attended a briefing at police headquarters prior to going on duty. They were advised of the nature of the altercation and of the issuance of a warrant. They were given a description of Tygart and of the motor vehicle in which he was believed to be riding. They were further advised that Tygart should be considered armed and dangerous.

At one o'clock that afternoon officers Evans and Kerns were notified by the police dispatcher that the people at 8708 W. 82nd Street had called in and advised that Tygart had first appeared at the house and had then driven away. One of the officers arrived at the house within a minute or so. Tygart was not there so the officer drove around the block, located the Tygart vehicle and followed it back to the house. The second officer arrived on the scene just as Tygart parked his vehicle in front of the house. The two officers approached the vehicle from opposite directions and the following events transpired. Officer Evans saw Tygart stand up in his van type vehicle when he was commanded to step from the vehicle. Tygart was visible through the back window of the van from his waist up to his shoulders. Tygart first was seen facing forward and then he was looking back toward the rear of the van. He ignored the officer's

command and remained in the vehicle for 15 or 20 seconds. The officer repeated his demand for Tygart to step from the vehicle. The officers did not know if anyone else was in the truck at that time. Tygart then opened the door on the driver's side and stepped out with a small baby in his arms. He was carrying the child in his right hand with his left hand behind the child's neck.

The officers approached Tygart with guns drawn. A neighbor lady came out of her house and approached the scene. She was the wife of another police officer who lived in that neighborhood. She advised the officers that Tygart was armed and had stated he had come to kill the people in the next house. Officer Kerns took the child from Tygart and handed it to the woman. She took the child and returned to her house.

The officers saw no visible weapon on Tygart. He was searched, advised of his rights and handcuffed. The officers then searched the vehicle for the weapon. Tygart was asked where the weapon could be located but he only smiled. The search continued and the weapon was finally located in a large compartment which could only be reached by standing in the front of the vehicle and reaching over the windshield area. The search covered three or four minutes, during which time Tygart was handcuffed and standing beside his truck. The entire inside of the van was searched before the weapon was located. During the progress of the search or immediately thereafter Officer Kerns asked Tygart about prior arrests and was advised that Tygart had served time in Washington and in Texas on felony charges. Both Evans and Kerns testified on cross-examination that at the time of the search of the vehicle Tygart was handcuffed and they were not concerned with a possible attempt to escape or an attack by Tygart.

K. S. A. 1973 Supp. 22-2501 provides:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of

"(a) Protecting the officer from attack;
"(b) Preventing the person from escaping; or
"(c) Discovering the fruits, instrumentalities, or evidence of the crime."

Appellee Tygart points to this statute and argues the search cannot be justified under (a) and (b). He further argues that assuming for the purpose of argument the officers could look into the vehicle for a possible confederate they were not authorized to conduct a

general exploratory search of the vehicle under sub-section (c) of the statute since he (Tygart) was arrested for simple assault.

It should be understood this statute merely states a proposition of general law and refers only to a search incident to a lawful arrest. It does not refer to a search which is otherwise reasonable and lawful such as one based on probable cause. A search incident to a lawful arrest may be reasonable and lawful based upon probable cause other than that which accompanies the usual lawful arrest.

The courts, both federal and state, have repeatedly recognized that a search of an automobile without a search warrant is constitutionally permissible if the search is incident to a valid arrest and is reasonable in scope. See for example *Henry v. United States*, 361 U. S. 98, 4 L. Ed. 2d 134, 80 S. Ct. 168, and *State v. Undorf*, 210 Kan. 1, 499 P. 2d 1105. But it should be further noted that the Supreme Court of the United States in discussing the validity of a warrantless search as incident to an arrest, has concluded that the search may be valid and justified on the basis of probable cause although not justified as incident to an arrest. See *Chambers v. Maroney*, 399 U. S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975, reh. den. 400 U. S. 856, 27 L. Ed. 2d 94, 91 S. Ct. 23. See also *State v. Robinson*, 203 Kan. 304, 454 P. 2d 527.

The extent of a warrantless search which may be justified solely as an incident to an arrest is limited generally to the area within the arrestee's immediate control. See *Preston v. United States*, 376 U. S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881. In general the federal and state decisions suggest that the critical circumstances to be considered in bringing a vehicle within the lawful scope of the rule are: (1) Proximity of the vehicle to the place of arrest; (2) the probability that the vehicle contains seizable items related to the crime; (3) the amount of time which has elapsed between the arrest and the search: (4) the recent departure of the arrestee from the vehicle; (5) the fact that the vehicle had been employed in some way in connection with the crime; and (6) the character of the place of arrest, *i. e.*, public street, business premises or private home. Other factors may bear upon the question and no single factor, standing alone, is decisive in a given case for each may have a significant effect on the court's determination of whether the search was a reasonable one.

However, as previously indicated, if law enforcement officers have

probable cause for searching a motor vehicle, other than that incident to a lawful arrest, such probable cause will furnish sufficient constitutional justification for their searching the vehicle without obtaining a search warrant, and in this respect the right to search the vehicle is different from and broader than the right to search premises such as a home, store or office. See *Brinegar v. United States,* 338 U. S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302, reh. den. 338 U. S. 839, 94 L. Ed. 513, 70 S. Ct. 31, where the high court noted that no problem of searching "the home or any other place of privacy was presented." Likewise in *Chimel v. California,* 395 U. S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, reh. den. 396 U. S. 869, 24 L. Ed. 2d 124, 90 S. Ct. 36, the court recognized that, assuming the existence of probable cause, automobiles could be searched without warrants where it was not practical to secure a warrant because the automobile could be moved out of the jurisdiction while a warrant was being sought. See also *State v. McCollum,* 211 Kan. 631, 507 P. 2d 196.

In *Chambers v. Maroney,* supra, it was held that where, in the middle of the night and in a dark parking lot, police officers had stopped an automobile and arrested the occupants, their search of the automobile at the police station after both the automobile and the occupants had been taken there was valid on the basis of probable cause. The court concluded that although the search could not be justified as incident to the arrest, it could nevertheless be justified on the basis of the existence of probable cause to search the automobile. The court recognized that automobiles can be searched without a warrant under circumstances which would not justify the search without a warrant of a house or an office, provided there is probable cause to believe that the automobile contains articles which the officers are entitled to seize. The court noted in *Chambers* there was a constitutional difference between the search of a store, dwelling house, or other structure as to which a warrant could readily be obtained, and the search of an automobile, as to which it was not practicable to secure a warrant because the automobile could be quickly moved out of the locality or jurisdiction in which the warrant had to be sought. The court there said a search of an automobile on the basis of probable cause can be upheld on a theory wholly different from that justifying a search incident to an arrest. Moreover, the court noted that it could be argued there was a preference for a magistrate's judgment and

only the immobilization of an automobile should be permitted until a search warrant was obtained, and that it could be further argued that only the "lesser" intrusion of seizing the automobile was permissible until the magistrate authorized the "greater" intrusion of searching it. But the court in *Chambers* emphasized that the question of which was the "greater" and which the "lesser" intrusion was itself a debatable question to which the answer might depend on a variety of circumstances and for constitutional purposes there was no difference between on the one hand seizing and holding an automobile before presenting the issue of probable cause to a magistrate, and, on the other hand, carrying out an immediate search without a warrant. The court stated that given probable cause to search either course was reasonable under the Fourth Amendment.

In the instant case we believe that the search and seizure of the pistol was reasonable in scope and lawful both as incidental to the arrest and as based on separate probable cause known to the officers. The search was conducted for a particular item known by the officers to have been taken by Tygart during the altercation which was the basis for the issuance of the arrest warrant. The pistol was evidence in support of both pending and possible future charges against Tygart. The fact that Tygart was charged and arrested for simple assault would not prohibit the seizure of the pistol as evidence. His possession of the pistol served to establish his presence in the house the night before when the altercation occurred and would bear upon intent to do bodily harm which was an element of the charge on which he was arrested. The theft of the pistol itself constituted an additional crime.

Additionally the officers were advised by the neighbor lady at the scene of the arrest that Tygart had the gun and had threatened to kill the people in the house at 8708 W. 82nd Street. This was an unforseeable circumstance such as is mentioned in *Chambers* which justifies an immediate search of his person and vehicle without a warrant. After a fruitless search of Tygart's person, about which he does not complain, the officers could reasonably assume that he left the gun in the vehicle before he complied with their demands to exit from the vehicle. Therefore this was not a general exploratory search made for investigative purposes. Neither was this a search incident to an arrest for a routine traffic offense where the court might find the arrest was merely a convenient excuse or pretext for

conducting a general search. See *Taglavore v. United States,* 291 F. 2d 262, and compare *United States v. Owens,* 346 F. 2d 329.

We have considered the cases cited by appellee in support of the district court's order suppressing the evidence and we are convinced the court erred. The order of the district court is reversed and the case is remanded to the trial court in accordance with Rule No. 17 (*d*) (Rules of the Supreme Court, 211 Kan. xxxviii.).