(599 P 2d 1025)

No. 50,345

STATE OF KANSAS, *Appellee,* v. RANDY E. MITCHELL, *Appellant.*

Opinion filed September 21, 1979.

*S. A. (Tim) Scimeca,* of Wichita, for appellant.

*Marvin R. Cook,* assistant district attorney, *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, for appellee.

Before FOTH, C.J., ABBOTT and SPENCER, JJ.

ABBOTT, J.: This is a direct appeal by the defendant, Randy Mitchell, from a jury verdict convicting him of burglary (K.S.A. 21-3715) and theft (K.S.A. 1978 Supp. 21-3701[a]). Defendant was sentenced as a habitual criminal to two concurrent terms of not less than nine nor more than twenty years.

At approximately 10:00 p.m. on January 23, 1978, the Wichita Police Department responded to a silent entry alarm at the Sunflower Construction Equipment Company. The silent entry alarm makes no sound at the scene, but notifies a private alarm company that notifies the police department. Police first observed defendant moving along the west side of the building. He walked south to a van parked just west of the C & C Equipment Company, a business located about ten feet south of Sunflower. The defendant looked to both left and right and began running. He was captured after a brief foot chase.

A second individual, William Buss, was apprehended at the scene, and he and a third person, Jack DeMott, were also charged with the burglary and theft.

After the defendant and Buss were apprehended, the officers then checked the building and the area around it. They located a U-Haul van parked near the west side of the building with its rear door partially open. Numerous power tools were observed inside the van. The officers saw part of the exterior metal that had been pulled back to gain entrance lying in an alleyway between that building and the C & C Equipment building. Additional power tools were lying in the snow, scattered from the hole in the building toward the U-Haul van.

A laboratory investigator was called to the scene. He photographed the van, and while he was processing the crime scene the van was towed to the police garage and impounded under guard. The laboratory investigator later went to the police garage and, without obtaining a search warrant, processed the van for fingerprints and removed the stolen property from it. Further facts will be given as necessary under the various issues raised by defendant.

Defendant claims error first by reason of the trial court's per-

mitting the State to endorse the names of two witnesses on the information on the day of trial or by reason of the court's refusal to grant defendant's motion for a continuance because of the late endorsement. The two names endorsed on the information were those of former codefendants Buss and DeMott. Both had entered pleas of nolo contendere and had been sentenced prior to trial. Although the State is obligated to endorse all potential witnesses to a case on the information, later endorsements are allowed within the sound discretion of the trial court whose ruling will not be disturbed in the absence of a showing of an abuse of discretion. *State v. Rueckert,* 221 Kan. 727, 729-30, 561 P.2d 850 (1977); *State v. Poulos,* 196 Kan. 287, 290, 411 P.2d 689, *cert. denied* 385 U.S. 827 (1966); K.S.A. 1978 Supp. 22-3201(6). The test is whether the defendant's rights have been prejudiced through having been surprised by the testimony, leaving him with inadequate time to prepare. *Rueckert* at 730. Some showing of prejudice to the defendant will be required before reversible error will be found. *State v. Wilson & Wentworth,* 221 Kan. 359, 559 P.2d 374 (1977). When called as witnesses, both Buss and DeMott refused to testify. Counsel for the defendant had previously interviewed both men and the trial court did allow counsel time to interview them again after they were endorsed on the information and prior to their testimony. Counsel did not renew his motion for a continuance after interviewing the witnesses or point out to the court why he needed additional time as a result of the witnesses' expected testimony. The trial judge may in his discretion refuse to grant a continuance (*State v. Holt,* 221 Kan. 696, 561 P.2d 435 [1977]), and from the record before us we are of the opinion that the trial court did not abuse its discretion in refusing to grant a continuance or in allowing the State to endorse the two witnesses' names on the information the morning of trial.

The appellant next contends that error occurred when the trial judge mentioned to the jury that the defendant was charged with class D felonies. Defendant reasons that the characterization of the charges as felonies created a negative image of the defendant in the minds of the jury, and that it is immaterial to the jury whether the offense is a misdemeanor or felony. Defendant does not otherwise attempt to demonstrate prejudice and cites no authority for his position.

The record indicates that on two occasions during his initial address to the jury in the voir dire proceedings, the trial judge referred to the offenses with which defendant was charged as class D felonies. The references were in passing, and do not appear to have been out of context with the rest of the court's remarks. The first instance followed the court's paraphrasing of the two counts with which defendant was charged, and it was immediately followed by remarks emphasizing the presumption of defendant's innocence. The second occasion appears in a discussion of the concept of peremptory challenges and merely explains to the jury that because this was a class D felony the defendant had six such challenges. The trial court saw no prejudice to defendant in such remarks, and defendant fails to demonstrate any although the burden is on him to do so. *United States v. Walton,* 552 F.2d 1354 (10th Cir.), *cert. denied* 431 U.S. 959 (1977); *State v. Holt,* 223 Kan. 34, 574 P.2d 152 (1977).

Defendant also contends that he was prejudiced because prospective jurors twice observed defendant being escorted by guards into the courtroom. The second time it occurred, counsel moved for a mistrial and now assigns the trial court's refusal to grant a mistrial as error. The guards were dressed in ordinary suits and therefore not identified by their clothing as police officers. Although armed, the weapons were concealed under their jackets. The defendant was not in restraints and was not identifiable as a prisoner by his clothing.

The trial court is authorized to grant a mistrial under K.S.A. 22-3423, which states in part:

"(1) The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because:

. . . .

"(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution."

The granting of a mistrial under that section is discretionary with the court, and its decision will not be overturned without a showing of abuse of discretion. *State v. McQueen & Hardyway,* 224 Kan. 420, 582 P.2d 251 (1978); *State v. Wilson & Wentworth,* 221 Kan. 359. Although every effort should be made to prevent jurors from learning that an accused is incarcerated at the time of trial, we cannot say from the record before us that defendant has

sustained his burden of showing an abuse of discretion or that defendant was actually prejudiced.

Defendant next asserts that he was prejudiced by the testimony of the arresting officer that a syringe and small bottle containing pills were removed from defendant's upper left coat pocket during a pat-down search at the scene of the burglary. Counsel objected and moved for a mistrial on the grounds that the testimony was irrelevant to the offense charged and inflamed the jury because it suggested illicit drug usage on the part of the defendant, thereby prejudicing him.

The testimony objected to came out unexpectedly in response to the State's question, "What did you do then?" being asked after the officer testified that he had "patted the suspect down." The officer replied, "I then removed from the upper left-hand coat pocket a syringe."

It was subsequently brought out that the defendant had a prescription for the pills, and there was no effort made to show that the pills and syringe were not for legitimate medicinal purposes.

This Court has recently pointed out that the creation of innuendos about illicit drug use is irrelevant and improper in most instances in a prosecution for theft. *State v. Dill,* 3 Kan. App. 2d 67, 589 P.2d 634 (1979). The record before us, however, does not show a clear abuse of discretion on the part of the trial judge, nor does the defendant demonstrate prejudice, and this Court will not reverse on mere conjecture.

Defendant next presents the question of whether it was error under the circumstances not to conduct a hearing outside the presence of the jury to determine if the former codefendants would refuse to testify when called as witnesses when no legal basis existed to support the witnesses' refusal to testify. At the time the codefendants entered their nolo contendere pleas and were sentenced, the State was under the impression that they were going to testify against the defendant in this case. During the trial, codefendants' counsel informed the State that they would refuse to testify. This fact was then brought to the attention of the trial judge, who instructed the codefendants' counsel to advise them that they had no right to refuse to testify and what the consequences of their refusal would be. The State denied that it knew for certain the codefendants would refuse to testify when

called. Although not pertinent to this appeal, the codefendants were subsequently found to be in direct contempt of court and, as a result of their refusal to testify, both were sentenced to one year in the county jail to be served consecutively with their felony sentences.

When the trial judge or prosecutor has reasonable cause to believe a witness will refuse to testify, it is better practice to conduct a hearing outside the presence of the jury to insure that the defendant's right to a fair trial is not inadvertently violated; but when the witness has no legal right to refuse to testify, it is not reversible error per se for the court to refuse to do so. Based on the records and briefs before us, we are unable to say the trial judge abused his discretion in refusing to conduct a hearing outside the presence of the jury.

Defendant filed a pretrial motion (which was denied) to suppress the personal property recovered from the U-Haul van. The State relies on the plain view doctrine as well as a search incident to a lawful arrest. The defendant does not dispute that the evidence meets the "plain view" exception to the warrant requirement set forth in *State v. Jones,* 2 Kan. App. 2d 38, 573 P.2d 1134 (1978), but he argues that "exigent circumstances" were not present, relying on *State v. Schur,* 217 Kan. 741, 538 P.2d 689 (1975).

We have no difficulty concluding that (1) the items were in plain view and represented the fruits of the crime, and (2) as the search was made with probable cause, the fact that the search was not made at the scene does not invalidate it. The tools were visible from outside the van. Similar tools were located in the building that had been burglarized, and others were lying on the ground near the van. The officer did not know how many suspects were involved in the crime and still at large in the immediate area. While our Supreme Court has said that plain view alone does not justify a warrantless search and seizure (*State v. Schur,* 217 Kan. at 744), there are a number of "exigent circumstances" that have been recognized as validating such an action and the facts in this case fall within that exception. The fact that the evidence is in a motor vehicle which due to its very nature is easily movable has been held to justify a search which would be improper if a house or office were involved. *Chambers v. Maroney,* 399 U.S. 42, 26 L.Ed.2d 419, 90 S.Ct. 1975, *rehearing denied* 400 U.S. 856 (1970);

*State v. Hays,* 221 Kan. 126, 130, 557 P.2d 1275 (1976); *State v. Tygart,* 215 Kan. 409, 524 P.2d 753 (1974).

It is of no importance that the search took place at the police station rather than at the scene of the crime. The record indicates that the events were all in one continuous sequence and that the removal and search of the vehicle was made within one and a half hours after the arrest of the defendant. These facts parallel those of *State v. Taylor,* 217 Kan. 706, 538 P.2d 1375 (1975), wherein a suspect's truck was impounded in Augusta, but towed to Wichita and searched there. Probable cause existed in *Taylor,* as in this case, to believe that the vehicle contained evidence relating to the commission of the crime, and it was therefore necessary to seize the vehicle to protect the evidence from being lost or destroyed. Concluding that the search was "clearly legal," the Court went on to say at 710-11:

"If the police had probable cause to search the truck at the time it was discovered and defendant arrested, they had probable cause to impound it and search it at a later, more convenient time."

In *Cardwell v. Lewis,* 417 U.S. 583, 41 L.Ed.2d 325, 94 S.Ct. 2464 (1974), wherein the police towed a car prior to searching it, the Court rejected a defendant's argument that a warrantless search and seizure was not necessary because the police officers could have made their search at the lot where the car was seized. Here, there is a delay of less than ninety minutes in making the search, a period of time considerably less than that which occurred in either *Cardwell* or *Taylor.* The search appears to have been "one continuous happening," as approved in *State v. Wood,* 197 Kan. 241, 246, 416 P.2d 729 (1966). See also *Texas v. White,* 423 U.S. 67, 46 L.Ed.2d 209, 96 S.Ct. 304, *rehearing denied* 423 U.S. 1081 (1975), and *Chambers v. Maroney,* 399 U.S. 42, where delayed searches made at a later time and place were approved when probable cause and exigent circumstances existed at the time the vehicle was seized and probable cause still existed at the time the search was made.

Defendant further contends that the verdict was unsupported by the evidence. The United States Supreme Court recently held in *Jackson v. Virginia,* _____ U.S. _____, 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979), that in a state criminal proceeding, the United States constitutional guarantee, that no defendant will be convicted of a crime except on proof beyond a reasonable doubt, has

been met when it is found from the trial record that evidence existed from which a rational trier of facts could have found proof of guilt beyond a reasonable doubt. We are satisfied that standard does not significantly differ from the present Kansas standard that, when considering the sufficiency of circumstantial evidence to sustain a conviction of a crime, the appellate court's function is limited to ascertaining whether there is a basis in the evidence for a reasonable inference of guilt. *State v. Goering,* 225 Kan. 755, 594 P.2d 194 (1979).

Although the evidence in this case is circumstantial, the jury could have considered it in the same way it would any other evidence. *State v. White & Stewart,* 225 Kan. 87, 587 P.2d 1259 (1978); *State v. Wilkins,* 215 Kan. 145, 523 P.2d 728 (1974). The defendant was found at the scene of a nighttime burglary, in an area where an individual normally would not be at that hour. He was observed hiding behind a van in which police found items from the burglarized building. He attempted to conceal himself and then fled. We have no difficulty concluding there is a basis in the evidence for a reasonable inference of guilt and that a rational trier of facts could have found proof of guilt beyond a reasonable doubt.

When the applicable standard is applied (*State v. Gustin,* 212 Kan. 475, 510 P.2d 1290 [1973]), we are of the opinion the trial court did not abuse its discretion when it denied the defendant's motion for acquittal following the close of the State's evidence.

Affirmed.