No. 72,265

STATE OF KANSAS, *Appellee,* v. EDDIE MCCLAIN, JR., *Appellant.*
(899 P.2d 993)

Opinion filed July 14, 1995.

*B. Kay Huff,* special appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant. Appellant filed a brief pro se.

*Anthony W. Mattivi,* assistant district attorney, argued the cause, and *Joan M. Hamilton,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Eddie McClain, Jr., appeals his conviction of aggravated robbery. This court has jurisdiction pursuant to K.S.A. 1994 Supp. 22-3601(b)(1).

McClain's pro se brief and that of his appellate counsel raise four issues for our consideration: (1) whether the evidence at trial was sufficient to show guilt beyond a reasonable doubt; (2) whether the search of the vehicle in which McClain was riding was permissible; (3) whether McClain was denied a timely preliminary examination; and (4) whether McClain was denied the effective assistance of counsel.

On February 21, 1993, the employees of a Wendy's restaurant in north Topeka, were robbed by two black males masked with nylon stockings and armed with semi-automatic handguns. The robbers forced an employee to place the cash from the register into a Wendy's bag. Altogether, the robbers took over $2,000.

Shortly after the robbery, Trooper Dan Smith of the Kansas Highway Patrol heard a dispatch broadcast by the Topeka Police Department indicating that an armed robbery had just taken place.

The broadcast described the individuals involved in the armed robbery as "two to three black males, one armed with a handgun and possibly wearing a dark stocking hat . . . and the vehicle involved was a small black pickup truck." In response to this broadcast, Trooper Smith positioned his patrol car near the intersection of Highway 75 and Interstate 70 in Topeka.

Within a few minutes, Trooper Smith observed a small, black pickup truck occupied by two black males traveling on Highway 75 away from the location of the north Topeka Wendy's. Smith pulled behind the vehicle and began following it as it exited eastbound onto I-70. After the vehicle exited I-70 onto a west Topeka street, Trooper Smith observed that it had a broken brake light. Trooper Smith activated his emergency equipment to stop the vehicle. During the time he was following the vehicle with his emergency lights on, Trooper Smith observed the driver and passenger acting suspiciously. The vehicle stopped in a parking lot.

The trooper informed the driver that he had stopped the truck because of a broken brake light and because he suspected the occupants were involved in an armed robbery. While Trooper Smith was speaking to the driver, he noticed that the passenger, later identified as McClain, attempted to reach inside his coat. Trooper Smith ordered both occupants of the truck to keep their hands on the dash. Other officers arrived on the scene. When the driver was not able to produce a driver's license, Trooper Smith removed the driver from the vehicle and placed him under arrest. Other officers removed McClain from the vehicle and arrested him for the robbery.

A nylon stocking, consistent with the type used in the robbery, was observed in McClain's waistband as he was removed from the vehicle. Officers searched the truck and recovered a 9 mm. semi-automatic handgun under the passenger seat, a Wendy's bag containing $2,169.86 in cash, and several Wendy's deposit slips in the glove box.

McClain was charged and convicted of one count of aggravated robbery. A second count of aggravated robbery involving a separate incident had been charged but was later dismissed. McClain was subsequently sentenced to a term of 15 years to life.

## Sufficiency of Evidence

The standard of review when the sufficiency of the evidence is questioned on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Bowen*, 254 Kan. 618, 631, 867 P.2d 1024 (1994); *State v. Graham*, 247 Kan. 388, Syl. ¶ 5, 799 P.2d 1003 (1990). The State, to obtain an aggravated robbery conviction under K.S.A. 21-3427, was required to prove that McClain (1) committed a robbery and (2) was armed with a dangerous weapon or inflicted bodily harm upon any person in the course of such robbery.

A review of the record reveals that two Wendy's employees testified that they were robbed by two black men brandishing guns. The employees gave the police a description of the men, their clothing, and the robbers' vehicle. McClain fit the general description given by the employees. McClain and another black male were apprehended within minutes of the robbery in a vehicle which fit the description of the one spotted leaving the scene of the robbery. McClain's clothing fit the general description given by the Wendy's employees. A handgun and a Wendy's sack containing money and Wendy's deposit slips were found inside the truck in which Mc-Clain was a passenger. A nylon mask was found partially concealed in the waistband of McClain's pants. Despite the absence of an eyewitness identification, this court can easily conclude that, after a review of all of the evidence, when viewed in the light most favorable to the prosecution, there is sufficient evidence for a rational factfinder to find McClain guilty beyond a reasonable doubt.

## Search of the Vehicle

McClain filed a motion to suppress the evidence seized during the search of the vehicle prior to trial. The trial judge denied McClain's motion, stating:

"I'm going to deny the motion and find that it was a lawful stop based upon probable cause on the police dispatch on the robbery and also the broken taillight, and that incidental to that stop and arrest of the driver, that the search is a valid search."

McClain contended that his rights under the Fourth Amendment were violated and that the police exceeded their authority under K.S.A. 1992 Supp. 22-2402(1)'s power to stop a suspect when the vehicle in which he was a passenger was stopped and subsequently searched. McClain argued that although the stop for a broken brake light, a traffic infraction, was valid, the officer improperly exceeded the scope of the traffic infraction by searching the pickup. The State responded that 22-2402(1) was not the authority used to stop and question McClain because the search was incident to an arrest.

K.S.A. 1992 Supp. 22-2402(1) provides:

"Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name, address of such suspect and an explanation of such suspect's actions."

As noted in *State v. Johnson*, 253 Kan. 75, 80, 853 P.2d 34 (1993), K.S.A. 1992 Supp. 22-2402 is a codification of the United States Supreme Court decision in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In *Terry*, 392 U.S. at 21, the Court held that an officer may stop and frisk an individual even though the officer does not have probable cause to believe a crime has been or is being committed if the officer is able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." See *State v. McKeown*, 249 Kan. 506, 508-09, 819 P.2d 644 (1991).

This court's standard of review is well settled:

"If the findings of the trial court on a motion to suppress evidence are based upon substantial evidence this court on review will not substitute its view of the evidence for that of the trial court."

"Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *State v. Garcia*, 250 Kan. 310, Syl. ¶¶ 2, 3, 827 P.2d 727 (1992).

The stop of a vehicle, under the circumstances set forth in K.S.A. 1992 Supp. 22-2402(1) and *Terry*, is different than merely approaching an individual in a public place. The stopping of a vehicle

by a law enforcement officer always constitutes a seizure. Therefore, to stop a moving vehicle an officer must have articulable facts sufficient to constitute reasonable suspicion of a violation. See *Delaware v. Prouse*, 440 U.S. 648, 661-63, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). To stop a vehicle to investigate circumstances which provoke suspicion, an officer must be aware of "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that the vehicle contains individuals involved in criminal activity. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975); *State v. McKeown*, 249 Kan. at 510.

To illustrate that the seizure of evidence from a vehicle stopped for a traffic offense was an improper exercise of power, McClain relies upon *State v. Damm*, 246 Kan. 220, 787 P.2d 1185 (1990), and *State v. Garcia*, 250 Kan. 310. *Damm* involved a stop of a vehicle after an officer observed its taillights were defective. After stopping the car, the officer demanded identification from the driver and his two passengers. All three complied and were left sitting in the vehicle while the officer returned to the police car to do a "routine records check" on each of the three occupants. The check on one of the passengers revealed an outstanding warrant for his arrest. The officer returned to the car and arrested the passenger pursuant to the warrant. The officer then proceeded to search the car. The search turned up drug paraphernalia and a small supply of cocaine, after which the officer arrested all three occupants for possession of cocaine. The State conceded there was no probable cause, no consent, and no plain view justification for the search. The major reason advanced by the officer for the search was that it was "department policy." *Damm*, 246 Kan. at 220-21.

In *Damm*, the defendant driver of the vehicle filed a motion to suppress the evidence obtained as a result of the search of the car. The trial court granted the motion to suppress and discharged the defendant. The State appealed. This court affirmed the trial court's suppression of the evidence, stating:

"The officer in this case had no reasonable suspicion that there were outstanding warrants for the passengers. He had no report of the commission of a crime, saw nothing within the car which would indicate to him that the occupants had

committed any offense, and had no reasonable justification for requiring identification of the passengers and running record checks on them. The seizure of the three occupants of the vehicle while "routine record checks" were made of all occupants was unreasonable. [Citation omitted.].

"Without the unreasonable detention, the officer had no reason to arrest [the passengers or the driver]. Without the arrest, there could be no search. Without the search, there was no evidence against [the defendant driver]. The detention and search being unlawful, the evidence is inadmissible as fruit of the poisonous tree. [Citations omitted.]" 246 Kan. at 224-25.

In *State v. Garcia*, this court upheld the district court's suppression of evidence obtained from a search of the defendant's vehicle and statements the defendant made after he was issued a warning ticket and released from custody. The defendant was stopped after an officer observed him make an unsignaled lane change. During the stop, the officer ordered the defendant to gather the vehicle's registration and proof of insurance and accompany him back to the patrol car. After questioning the defendant, the officer issued him a warning ticket for failure to signal a lane change. The officer handed the defendant the ticket and told him he was free to go. As the defendant reached to open the door and exit the patrol car, the officer asked the defendant if he would consent to a search of the automobile. After several attempts, the officer obtained the defendant's verbal and written consent to search the vehicle. In searching the vehicle, the officer discovered marijuana concealed in the trunk. The defendant was arrested, handcuffed, and taken to a highway patrol office for interrogation, where he eventually signed a written statement. 250 Kan. at 311-313.

The defendant filed a motion to suppress the evidence prior to trial. In a memorandum decision, the district judge ordered the evidence obtained as a result of the search and all statements made subsequent to the delivery of the warning ticket suppressed. Although the judge doubted the stated reason for the stop, the judge determined the State had sustained its burden of proof by a preponderance of the evidence that the initial stop of Garcia's vehicle was valid. The judge further noted, however, that there was a second or continued seizure of the defendant which did not pass constitutional scrutiny because (1) the trooper did not have a reason-

able and articulable suspicion of a crime being or having been committed and (2) the scope and duration of the seizure of the defendant exceeded that of the original valid stop. The judge found that the trooper's testimony as to why he questioned the defendant after issuing the ticket was not credible. The judge held that the second detention was unlawful; that the defendant's subsequent consent to search was not voluntary; and that the defendant's oral statements, during the car stop and in subsequent interviews, were inadmissible because the evidence was tainted by the unlawful detention and illegal search of the vehicle. 250 Kan. at 315-317.

On appeal, the Court of Appeals reversed the district court, holding there was insufficient evidence to support the district judge's finding that the defendant's consent to the search of the vehicle was not voluntary. This court accepted the defendant's petition for review and reversed the Court of Appeals. In finding that the evidence should be suppressed, this court noted that there was substantial evidence supporting the trial court's conclusion that there was an illegal seizure of the defendant, that the defendant's oral and written consents to a search of the vehicle were not voluntary, and that the statements the defendant made were inadmissible. 250 Kan. at 318-19.

*Damm* and *Garcia* are readily distinguishable from the case at hand. Trooper Smith did not arrest McClain because of the traffic offense or stop the vehicle under K.S.A. 1992 Supp. 22-2402(1). The officer stopped the vehicle and arrested the occupants because they matched the general description of two armed robbers in a black pickup who had just robbed a Wendy's restaurant approximately 10 minutes earlier. The pickup was observed traveling in a direction away from Wendy's. The occupants of the pickup were behaving suspiciously; the passenger intermittently disappeared from the trooper's view, and the driver continually checked the side-view mirrors.

A law enforcement officer may arrest a person if the officer has probable cause to believe that the person is committing or has committed a felony. K.S.A. 22-2401(c)(1). An arrest is the taking of a person into custody in order that the person may be forthcoming to answer for the commission of a crime. K.S.A. 22-2202(4).

An arrest is made by an actual restraint of the person arrested or by his or her submission to custody. K.S.A. 22-2405(1). Trooper Smith had probable cause to stop the vehicle and arrest the occupants because he had probable cause to believe that the occupants had committed a robbery.

After arresting the occupants of the vehicle, did the officer have authority to search the vehicle for fruits of the crime of aggravated robbery? In *New York v. Belton*, 453 U.S. 454, 460, 69 L. Ed. 2d 768, 101 S. Ct. 2860, *reh. denied* 453 U.S. 950 (1981), the United States Supreme Court laid down the following "bright-line" rule: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."

*Belton* involved the stop of a speeding car. The officer asked the driver for his license and the automobile registration. He discovered that none of the occupants owned the vehicle or were related to the owner. Meanwhile, he smelled the odor of burnt marijuana and saw an envelope marked "Supergold" on the floor of the car; he associated the envelope with marijuana. He directed the four occupants to get out of the car and arrested them for possession of marijuana. He then patted them down, picked up the envelope and found marijuana inside, and proceeded to search the passenger compartment of the vehicle. He found cocaine in the pocket of a jacket which was lying on the back seat. The United States Supreme Court found the search constitutionally valid, laid down the aforementioned bright-line rule, and went on to say that "the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." 453 U.S. at 460.

Prior to the United States Supreme Court decision in *Belton*, this court established the following six criteria for determining if a search of a vehicle is incident to a valid arrest: "(1) Proximity of the vehicle to the place of arrest; (2) the probability that the vehicle contains seizable items related to the crime; (3) the amount of time which has elapsed between the arrest and the search; (4) the recent

departure of the arrestee from the vehicle; (5) the fact that the vehicle had been employed in some way in connection with the crime; and (6) the character of the place of arrest, *i.e.*, public street, business premises or private home. Other factors may bear upon the question and no single factor, standing alone, is decisive in a given case for each may have a significant effect on the court's determination of whether the search was a reasonable one." *State v. Tygart*, 215 Kan. 409, 412, 524 P.2d 753 (1974); see *State v. Van Wey*, 18 Kan. App. 2d 260, 850 P.2d 283 (1993). Since its filing in 1981, Kansas courts have consistently applied *Belton* to allow an officer to search the passenger compartment of an automobile when its occupant is arrested. See *State v. White*, 230 Kan. 679, 680, 640 P.2d 1231 (1982); *State v. Press*, 9 Kan. App. 2d 589, 593-95, 685 P.2d 887, *rev. denied* 236 Kan. 877 (1984).

Based upon the factors set out in *Tygart*, the trial court properly concluded that the search here was incident to a valid arrest and properly admitted the evidence.

### Preliminary Examination after Arrest

McClain asserts that the State violated K.S.A. 22-2902(2) by failing to hold a preliminary examination within 10 days after his arrest. The complaint was filed April 16, 1993. On April 19, McClain was present for a first appearance, bond was set, and counsel appointed. On April 22, the preliminary examination was set for June 10. Prior to the hearing, the State requested and was granted a continuance by the court. On June 11, the preliminary examination was set for July 23. On July 22, defense counsel filed a motion to withdraw. At a hearing on July 23, the court granted defense counsel's motion to withdraw, appointed the public defender to represent McClain, and continued the case at McClain's request. The preliminary examination was held and McClain waived formal arraignment on August 23. McClain filed a motion challenging the timeliness of his preliminary examination on October 13.

The trial court, in addressing this issue as part of McClain's pretrial motion to dismiss, stated:

"Regarding the timeliness of the preliminary hearing, this case was dismissed once by the State and neither the Court nor defense counsel didn't do anything

about that. It was refiled. The matter apparently was originally set for the 11th of June and moved to the 23rd of July. And apparently that was on request of the State. Again, the docket sheet does not help me very much in that Judge Conklin made a note on the 11th of June to obtain testimony of material witness, request of the State. It doesn't necessarily say by agreement or not by agreement. I don't know. The fact is, then, that there was a month delay, approximately, between the setting in July until it was able to be reset in August due to Mr. McClain's request that counsel be changed, which the court obliged him.

"So, the 10 days is directory. Certainly the press of business in this district, it seems to me that the case is—preliminary hearing was set in due course after the refiling of this case, it was set within 60 days of the first appearance in this case, and then reset it within 30 days, which is about as good as we can do. So, I'm going to deny it also for the delay."

K.S.A. 22-2902(2) requires that a preliminary hearing be held within 10 days of arrest unless a continuance is granted for good cause. Unlike K.S.A. 22-3402, which requires the discharge of a person not promptly brought to trial, K.S.A. 22-2902(2) does not require the dismissal of the charge and the discharge of the defendant if a preliminary hearing is not provided within 10 days. *State v. Fink*, 217 Kan. 671, Syl. ¶ 3, 538 P.2d 1390 (1975). This time limitation is directory. Inconsequential delay beyond the 10 days will not require dismissal of the charges. In addition, the sufficiency of the preliminary hearing includes its timeliness and this may only be challenged by a motion to dismiss under K.S.A. 1992 Supp. 22-3208. *State v. Smith*, 215 Kan. 34, 37, 38, 523 P.2d 691 (1974). A motion under K.S.A. 1992 Supp. 22-3208 to dismiss or to grant appropriate relief must be filed no later than 20 days after arraignment. Failure to raise a question as to the sufficiency or timeliness of the preliminary hearing by such a motion constitutes a waiver and precludes review on appeal. K.S.A. 1992 Supp. 22-3208(3), (4); *State v. Weigel*, 228 Kan. 194, 201, 612 P.2d 636 (1980); *State v. Smith*, 215 Kan. at 37. McClain waived this issue by failing to file a motion to dismiss as required by 22-3208.

### Effective Assistance of Counsel

McClain asserts he was deprived of the effective assistance of counsel because his first attorney failed to (1) protect McClain's rights to a speedy trial; (2) protect valuable defense evidence, *i.e.*, a 911 dispatch tape recording; (3) obtain a more complete descrip-

tion of the robbers, either by statement or testimony of witnesses; and (4) object to the extended period of time elapsed prior to the preliminary examination.

McClain has the burden to satisfy the requirements of the ineffective assistance of counsel test. See *Chamberlain v. State*, 236 Kan. 650, 655, 694 P.2d 468 (1985). To prevail on a claim of ineffective assistance of counsel, McClain must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability the result would have been different had McClain received effective assistance. See *Chamberlain v. State*, 236 Kan. at 656-57. McClain must "overcome a presumption counsel's assistance was reasonable." 236 Kan. at 654. Additionally, in evaluating an ineffective assistance of counsel claim, "[t]he appellate court places much deference upon the findings of the trial judge who saw all the proceedings first-hand as they happened. [Citation omitted.]" *State v. Humphrey*, 252 Kan. 6, 25, 845 P.2d 592 (1992). The trial court examined the facts and found McClain was not denied the effective assistance of counsel.

McClain fails to show a factual basis for finding that his counsel's performance either fell below an objective standard of reasonableness or that there is a reasonable probability the result would have been different had McClain received more effective assistance. McClain was not denied the effective assistance of counsel.

Affirmed.